IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.   12-cv-204-MJR-SCW |
| ) | |
| NATHANIEL MAUE and MICHAEL ) | |
| SCHNICKER, ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

I.   Introduction

This case is before the Court on a Motion for Summary Judgment on the Issue of Exhaustion (Docs. 58 and 59) filed by Defendants Maue and Schnicker.  The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).  It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Defendants' Motion for Summary Judgment (Docs. 58 and 59).

II.   Findings of Fact

A.   Procedural Background

On March 5, 2012, the Plaintiff filed a Complaint against numerous individuals asserting that he was the subject of retaliation and assault by various staff members.  After the Court's § 1915 review, the only claim which remained was a claim against Officer Mave Hall and C/O Schiner

for excessive force (Doc. 16). Specifically, Plaintiff alleged that the Defendants kicked Plaintiff's legs out from underneath him while he was on the stairs (*Id.* at p. 4). On October 5, 2012, the undersigned entered an Order amending Plaintiff's Complaint by substituting Mave Hall and C/O Schiner for the proper Defendants Nathaniel Maue and Michael Schnicker (Doc. 32). In response, Defendants filed the instant Motion for Summary Judgment on the Issue of Exhaustion (Docs. 58 & 59).

In Defendants' motion for summary judgment, Defendants argue that Plaintiff has failed to exhaust his administrative remedies against them because he failed to properly identify the Defendants. Defendants point out that Plaintiff filed a grievance which was received by the ARB, dated July 14, 2011, alleging that he was assaulted by staff (Doc. 59 Ex. A at ¶ 9). The ARB received the grievance on July 20, 2011 and returned the grievance on July 22, 2011 because Plaintiff had failed to provide a copy of the grievance officer and chief administrative officer's responses (*Id.*; Ex. B). Another grievance was received by the ARB on September 1, 2011 (*Id.* at ¶ 11) concerning the same assault. This grievance also alleged that Plaintiff had been issued a false disciplinary ticket. The ARB issued a ruling on the false disciplinary ticket but refused to respond to the allegations concerning the staff assault finding that Plaintiff had failed to adequately identify the correctional officers who allegedly caused the assault (*Id.* at ¶ 11; Ex. F). Defendants argue that Plaintiff failed to exhaust his administrative remedies against them because he failed to adequately identify the Defendants and there was no final determination on the merits by the ARB. Plaintiff filed a Response (Docs. 63 & 64) to the motion, arguing that he did not know the identities of the individuals at the time he filed his grievance and he described them in detail in his grievance.

B.     *Pavey* **Hearing**

Because the undersigned found that there were issues of fact as to whether Plaintiff exhausted his administrative remedies, the Court conducted a hearing on in accordance with *Pavey v. Conley*, **544 F.3d 739, 742(7th Cir. 2008).**

The Court first attempted to hold a *Pavey* hearing on October 23, 2013, but due to technical difficulties with the video conferencing equipment, the hearing had to be rescheduled (Doc. 72).  At that time, the Court also Ordered Defendants to provide to the Court, prior to the hearing, several documents that were missing from the administrative record, namely documents referenced by the ARB in its November 30, 2011 letter declining to rule on Plaintiff's grievance regarding staff conduct that two officers jumped him.  These referenced documents included the Grievance Officer's Report and Recommendation, and the Disciplinary Report and Adjustment Committee Summary.  Defendants provided these documents to the Court the day prior to the rescheduled *Pavey* hearing and the Court noted its intention to consider those documents as part of the record.

On December 17, 2013, the Court again held a *Pavey* hearing on Defendants' motion (Doc. 80).  At that hearing, Defendants called Sherry Benton, chairman of the ARB.  Benton testified that she was asked to review grievances filed by Plaintiff with the ARB.  She testified that she reviewed a grievance received by the ARB on September 1, 2011 regarding a disciplinary report dated July 9, 2011 and staff conduct, namely an assault on Plaintiff by two officers.  Benton denied the grievance after reviewing the disciplinary ticket, the adjustment committee summary, the counseling entries regarding the incident, and the grievance officer's response.   While Benton acknowledged that she made a decision regarding the disciplinary ticket issue and ultimately denied the grievance as to the staff conduct issue, Benton found that Plaintiff had failed to name or identify the officers involved in jumping him.  Benton testified that she read the body of the grievance and did not see any identifying

traits with regards to the staff involved. Benton stated that she did read the disciplinary ticket which was attached to the grievance and noted the names of the officers who wrote the ticket but did not assume that those were the same officers who jumped him as "quite frankly, it's not my job to assume what Mr. Hall is thinking or what Mr. Hall wants to say." (Doc. 81 at p. 11). Benton testified that if Plaintiff believed the officers who wrote the ticket were the ones that assaulted him, then he also had the ticket and could copy the names into his grievance, which he did not do in this case, despite the fact that the disciplinary report was attached to the grievance. Benton stated she was only required to review what Plaintiff wrote down on his grievance and nothing else.

Plaintiff also testified at the *Pavey* hearing. He stated that he could not identify the officers who assaulted him because IDOC withheld the information when the incident occurred. He also believed that another officer wrote the disciplinary ticket in order to keep him from identifying the officers involved. Plaintiff acknowledged that Defendant Schnicker's name was located on the top of the disciplinary report, but that Schnicker was not the officer that handed him the disciplinary report and so he believed another officer wrote it. He knew that the officer that handed him the disciplinary report was not the officer that assaulted him. Plaintiff testified that he was not educated enough to realize that the name of the officer on the ticket was the name of the officer involved in the assault. Plaintiff noted that he did not have the correct names of the two officers involved until 2012 and that he even initially identified Defendant Maue as Defendant Maue Hall, because he had the names all "mixed up." (Doc. 81 at p. 17). Plaintiff also testified that he believed the disciplinary report originally provided to him was different than the one in the record.

### III. Conclusions of Law

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to

judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has

no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

A.      **Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims.  **20 Ill. Administrative Code §504.800 et seq.**  The grievance procedures first require inmates to speak with the counselor about their complaint.  **20 Ill. Admin. Code §504.810(a).**  Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.  *Id*.  The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**  "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances."  **20 Ill. Admin. Code**

**§504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

Here, the undersigned finds that Plaintiff exhausted his administrative remedies. Plaintiff stated in his grievance that two officers assaulted him and attached the disciplinary report which formed the basis of Plaintiff's grievance.  In that disciplinary report, Defendant Schnicker wrote that he and Defendant Hall were escorting Plaintiff to protective custody when an incident with Plaintiff occurred.   Read in conjunction with Plaintiff's grievance which stated that he was attacked by two officers while they escorted him to protective custody, it is clear that Plaintiff is referring to Defendant Schnicker and Hall in his grievance.   Plaintiff's grievance indicated that two officers were escorting him and that they made him seem aggressive by one officer pulling him one way and the other officer pulling him the other way, and then one of the officers kicked both off Plaintiff's feet out from under him causing him to fall.  His grievance further stated that he was now in segregation because of the incident.   This clearly meshes with the disciplinary report written by Schnicker which indicated he and Hall escorted Plaintiff to protective custody when Hall became aggressive.

As it is plainly clear from a reading of Plaintiff's grievance and the disciplinary report of the issue that the two officers Plaintiff refers to in his grievance were the same officers in the disciplinary report, the undersigned finds Sherry Benton's testimony to the contrary to be disingenuous.   Benton testified that it was not her job to assume who Plaintiff was referring to in his grievance, but it is clear to the undersigned that the two officers in the disciplinary report are the officers Plaintiff is referring to.   Further, the undersigned finds Plaintiff's testimony that he was confused about who the officers were to be credible.   Plaintiff testified that he was confused about Defendants' identifies because the officer who delivered the disciplinary report was not one of the officers involved in the assault, so he believed the names in the disciplinary report were not those

involved in the incident.[1]  Plaintiff's stated confusion was credible especially given that, with all due respect to the Plaintiff, it was clear to the undersigned from Plaintiff's testimony that he is not overly intelligent.

Thus, the undersigned finds that Plaintiff adequately identified the Defendants in his grievance as it was very clear, when read in conjunction with the disciplinary report, who the individuals were Plaintiff was referring to.  Instead, it appears to the undersigned that the ARB simply decided to ignore the clear record before it and return the grievance because Plaintiff did not specifically point it out to the ARB.  While Benton testified that she is not required to make assumptions, the undersigned finds that no assumptions were required in this case; all that was required was that she acknowledge the only reasonable inference from a reading of both the grievance and the disciplinary report.  Further, an inmate is not required to specifically identify individuals in their grievance.  All that is required is that an inmate "include as much descriptive information about the individual as possible."  **20 Ill. Admin. Code §504.810(b).**  Here, Plaintiff did just that and the undersigned finds his testimony that he provided all the information that he had to be credible.  Further, the undersigned finds that Plaintiff provided enough information from which the ARB could have easily identified the officers Plaintiff was referring to.  Their failure to do so is of no fault of Plaintiff's.  Thus, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has exhausted his administrative remedies as to Defendants Maue and Schnicker.

### IV.  Conclusion

Accordingly, it is **RECOMMENDED** that the Court **FIND** that Plaintiff has exhausted his administrative remedies as to Maue and Schnicker and **DENY** Defendants' motion for

---

[1] Plaintiff also stated the disciplinary report in the record is different than the one he was originally given.  Plaintiff is likely wrong on this point, but the undersigned finds Plaintiff's testimony that he believes it to be true as a credible statement of Plaintiff's belief.

summary judgment (Docs. 58 & 59).

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before <u>**January 30, 2014**</u>.

**IT IS SO ORDERED**.
DATED: January 13, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge