IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN HALL, )
)
        Plaintiff, )
)
vs. ) No. 12–cv–0204–MJR–SCW
)
NATHANIEL MAUE and MICHAEL )
SCHNICKER, )
)
        Defendants. )

## MEMORANDUM & ORDER

**REAGAN, District Judge:**

    This § 1983 civil rights case, in which Plaintiff has sued two Illinois Department of Corrections ("IDOC") officers for alleged excessive force, comes before the Court on a Report & Recommendation ("R&R") issued by Magistrate Judge Stephen C. Williams. Having assessed and held a hearing on Defendants' Motion for Summary Judgment, in which they argue Plaintiff failed to exhaust his administrative remedies, Judge Williams recommends denying Defendants' motion and allowing the case to proceed.

    Defendants have filed a timely objection to the R&R. The undersigned must therefore undertake *de novo* review of the sections of the R&R to which Defendants object. **28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b).** The undersigned can accept, reject, or modify the recommendations made by Judge Williams, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.*[1] For the reasons stated below, the Court **ADOPTS**

---

[1] For the purposes of this Memorandum and Order, while the Court undertakes *de novo* review of the R&R portions to which Defendants object, the Court will give great deference to Judge Williams' factual findings and credibility determinations. *Pavey v. Conley* (*Pavey II*), 663 F.3d 899, 904 (7th Cir. 2011). *See also Towns v. Holton*, 346 F.App'x 97, 100 (7th Cir. 2009) (great deference to credibility findings based on demeanor); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995) ("[D]e novo determination is not the same as a *de novo*

Judge Williams' R&R (**Doc. 82**) in its entirety, and **DENIES (Doc. 58)** Defendants' Motion for Summary Judgment.

Because Defendants' objection only targets whether Plaintiff's grievance supplied enough information to satisfy the PLRA's exhaustion requirement, the Court limns discussion of the controlling legal standards to that narrow issue.

1. **The Prison Litigation Reform Act ("PLRA") and Illinois' Exhaustion Requirements**

The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought [under federal law] with respect to prison conditions … by a prisoner…until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a)**. Under the PLRA, exhaustion of administrative remedies is mandatory: unexhausted claims cannot be brought in court. *Jones v. Bock,* **549 U.S. 199, 211 (2007).** The case may proceed on the merits only after any contested issue of exhaustion is resolved by the court. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

The Seventh Circuit takes a strict compliance approach to exhaustion, requiring inmates follow all grievance rules established by the correctional authority. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006).** A prisoner must "file complaints and appeals in the place, and at the time, the prison's rules require." *Pozo v. McCaughtry,* 268 F.3d 1022, 1025 (7th Cir. 2002). But precedent does not require perfect congruence between a prisoner's grievance and his federal court complaint, only that prison officials are alerted to a perceived problem and invited to take corrective action. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). *See also Jones v. Bock*, **549 U.S. 199, 219 (2007) (providing early notice to those who might later be sued is not one of the leading purposes of the PLRA's exhaustion requirement).** The purpose of exhaustion, after all, is to alert the state to the prisoner's problem and to invite corrective action. *Turley v. Rednour*,

---

*hearing*. **The district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations.") (emphasis added).**

**729 F.3d 645, 649–50 (7th Cir. 2013);** *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006).** When that purpose has been met, the prisoner has properly exhausted his remedies. *Kaba*, **458 F.3d at 684.**

IDOC's grievance policies require a prisoner to include "as much descriptive information" as possible when filing an administrative grievance. **20 Ill. Admin. Code § 504.810(b).** "The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* The procedure, however, "does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." *Id.*

Courts construe the contents of an inmate's grievance generously. *Riccardo v. Rausch*, **375 F.3d 521, 524 (7th Cir. 2004).**

2. **Plaintiff's 2011 Grievance & Judge Williams' Findings**

In concluding that Plaintiff had exhausted his administrative remedies, Judge Williams examined Plaintiff's grievance (dated July 14, 2011), to which was appended a disciplinary report that included both Defendants' names. Judge Williams also considered testimony from both Plaintiff and the IDOC's Administrative Review Board ("ARB") chair.

Plaintiff's grievance, in pertinent part, reads:

On this date [July 14, 2011] I was jumped and framed by two officers in N1 [Menard's "North One" cellhouse]. What happen was I ask to speak to the crisis team, because I was stressing about not being able to check in to Protective Custody. Twho days before this happen to me I was in P.C. Placement placed me in N1 7-36 [presumably a specific cell] where I seen two enemies that I had problems with in Cook County Jail. So I ask to be put into P.C. and they denied me. So when I ask for the crisis team they got angry and jumped me with my handcuffs on … [As soon as a nurse left] I got sweep off my feet on to my back where I'm handcufft. They came over to me like we were going to P.C. and then they jumped me for no reason. (Doc. 59-1, 6–7).

3

Attached to the grievance was a disciplinary ticket received by Plaintiff.[2] That disciplinary ticket was signed by both Defendants, though it was given to Plaintiff by another correctional officer. Plaintiff testified (credibly, according to Judge Williams) that he thought the disciplinary ticket had been written not by the officers who (allegedly) assaulted him, but by another officer.

The ARB chair (Sherry Benton) testified that Plaintiff attached his disciplinary ticket to his grievance, but that she did not assume the officer who wrote the ticket was the officer who "jumped him." (Doc. 81, 11). When pressed by Judge Williams, she testified "it's not my job to assume what [Plaintiff] is thinking or what [Plaintiff] wants to say. That's what the grievance form is for." (*Id.*).

The grievance form, however, clearly directs an offender: **"Attach a copy of any pertinent document (such as a Disciplinary Report)."** (Doc. 59-1, 6).

During the hearing, Judge Williams found "that, in context, when looking at the grievance that was submitted by [Plaintiff], it is patently clear who the individuals are that he would be referring to." (Doc. 81, 21). Judge Williams continued (and echoed the finding in his R&R): "You have to put enough information there for [IDOC officials] to make a determination. There was plenty." (*Id.*). Defendants' sole argument here is that Plaintiff's July 2011 grievance did not contain sufficient descriptive information to identify Defendants.

## ANALYSIS

Having considered the entire record, and with particular attention paid to the *Pavey* hearing transcript and Plaintiff's administrative grievance, the undersigned finds Defendants' objection meritless. While the ARB chair testified that she cannot "assume what Plaintiff is thinking," she was

---

[2] The disciplinary ticket—which Judge Williams ordered Defendants to provide—seems not to have made its way into the record, though it is clear from the hearing transcript that Judge Williams considered it. Further, Defendants have no objection to the contents of the disciplinary ticket as described by Judge Williams. The undersigned finds it disturbing that Defendants' motion did not include the disciplinary ticket in the first instance, since the ARB chair's testimony makes it clear she examined the disciplinary ticket contemporaneously with Plaintiff's grievance.

under some obligation to consider Plaintiff's disciplinary ticket and attempt to identify the targets of Plaintiff's grievance. As she admits, IDOC policy does not require an offender who does not know his attackers' names to name them, only "as mujch descriptive information about the individual[s] as possible." **20 Ill. Admin. Code § 504.810(b).** Ample descriptive information—including the cellhouse assignment and time of day—could have assisted any IDOC official in winnowing down the targets of Plaintiff's grievance, especially since Plaintiff's disciplinary ticket made clear (to the ARB chair, if not to Plaintiff) just what officers were present during the incident at the heart of this case. Further, as noted above, offenders are directed to attach copies of relevant documents—including disciplinary reports like Plaintiff appended—to their grievance. *See Pozo v. McCaughtry*, **268 F.3d 1022, 1025 (7th Cir. 2002) (prisoner must file his complaints/appeals according to the prison's rules).** The ARB chair's choice not to examine the contents of Plaintiff's disciplinary ticket in conjunction with his grievance was simply error on her part.

It is Defendants' burden to show Plaintiff failed to exhaust his administrative remedies, and they have not carried that burden here. The purpose of the PLRA's exhaustion requirement is simply to alert the state to a prisoner's problem and invite corrective action. *Turley v. Rednour*, **729 F.3d 645, 649–50 (7th Cir. 2013).** By submitting his disciplinary ticket along with his grievance form, Plaintiff gave the IDOC ample information to know which correctional officers may have assaulted him. That is all the PLRA requires.

## CONCLUSION

The undersigned **ADOPTS (Doc. 82)** Judge Williams' Report & Recommendation in its entirety, and **DENIES (Doc. 58)** Defendants' Motion for Summary Judgment.

    IT IS SO ORDERED.
    DATE: <u>February 25, 2014</u>          s/ *Michael J. Reagan*
                                        **MICHAEL J. REAGAN**
                                        United States District Judge